UNITED STATES DISTRICT COURT
　　　　FOR THE DISTRICT OF RHODE ISLAND


WAGNER JACINTO AND
CESILIA RODRIGUEZ

　　　　VS                                    CA 20-CV-384-MSM-PAS

WILMINGTON TRUST COMPANY  AS
SUCCESSOR TRUSTEE FOR THE BENEFIT
OF THE CERTIFICATE HOLDERS OF
POPLAR ABS, INC MORTGAGE
PASS-THROUGH CERTIFICATES SERIES 2005-C,
PHH MORTGAGE   CORPORATION

<u>PLAINTIFF'S REPLY MEMORANDUM  TO PHH MORTGAGE CORPORATION'S
RESPONSE TO MOTION  TO COMPEL PRODUCTION OF DOCUMENTS SUBPOENAED
AND FOR SANCTIONS AGAINST DEFENDANT PHH MORTGAGE CORPORATION</u>

　　　　Plaintiffs, by their attorney, have moved that Defendant, PHH Mortgage

Corporation be adjudged in contempt for  failure to comply with a Subpoena Duces

Tecum despite the fact that a Motion for a Protective Order was denied by this

Court. Contrary to the assertions of the Defendant's attorney, the Defendant has

not complied with the subpoena duces tecum served on PHH Mortgage

Corporation. This Court denied the Motion to Quash the entire  Subpoena and this

discovery propounded by the Plaintiffs has not yet been completely responded to

by the Defendant. No privilege log has been provided by PHH Mortgage

Corporation.    The responses have simply not been responsive and contrary to the

Defendants, certain documents have to this date not been provided. This case

1

revolves around the allegations that Ocwen Financial Corporation did not board the loan modification, which was executed by the Plaintiffs and by Ocwen Financial Corporations legal counsel, as indicated by the document attached to the complaint and to this Motion. The following allegations in the complaint reference this Modification:

Plaintiffs accepted this modification offer and agreed to this contract, which provided for the following terms: $154,000.00 after applying the first payment for 234 months with an August 1, 2035 maturity date at an interest rate of 3.95% the principal and interest payment was $944.83 and the current escrow payment was $449.03.

10.     Plaintiffs indicated their acceptance of this loan modification offer on February 1, 2016 by mailing Hinshaw and Culbertston LLP, the attorney for Ocwen,  their acceptance of the loan modification offer and the down payment of $1,393.86. A copy of this letter is attached as Exhibit D. This check was cashed by Ocwen.

11.     On February 29, 2016, through their attorney, Plaintiffs made the first payment for March, 2016 on the modification in the amount of $1400.00 for the regular payment plus $6.14 for additional principal. A copy of this letter and check is attached as Exhibit E. This check was cashed by Ocwen.

2

12.    On March 31, 2016 Plaintiffs signed the modification and transmitted it to Hinshaw & Culbertson by letter, through their attorney, with another check for the second payment for April, 2016 of $1400.00. A copy is attached as Exhibit F. This check was cashed by Ocwen.

13.    This modification was executed by Ocwen as attorney in fact for the mortgagee on April 4, 2016 by its Vice President and Assistant General Counsel Joel L. Israel.  A copy of this executed modification is attached as Exhibit G.

14.    On  May 6, 2016 Plaintiffs mailed another check for $1400.00 to Hinshaw & Culbertson by letter, through their attorney, for the third payment for May, 2016 of $1400.00. A copy is attached as Exhibit H. This check was cashed by Ocwen.

16.    Plaintiffs did not receive any statements until July, 2016 when Ocwen mailed multiple statements to them dated July 7, 2016.

Thus the issue in this case is why Ocwen (now PHH Mortgage as successor in interest) did not board the modification. The entire Servicing file, life of the loan transactional history for Ocwen,, which is the electronic program referred to as Stage 5 Database is the original non-altered version of the Ocwen Real Servicing system which has been decommissioned.  This has not been provided nor has the PHH electronic system of record referred to as MSP Loan Sphere of Black Knight. PHH refuses to provide the original documents, but instead provides its exported data from those original and unchangeable electronic documents of record.  The

3

Defendant submitted an affidavit of Gina Feezer, who made certain contentions in her affidavit primarily that it was her opinion that no changes were ever made to the so-called Customewr Account Statement from the Stage 5 Database.  However she did not establish any foundation for this assertion.  This insertion of an affiant without any foundation for the basis of her knowledge is designed to preclude the Plaintiffs from viewing the readily accessible original records of Ocwen in the Stage 5 database, which contains the original records without any filtering. This database contains multiple fields not contained in this so-called Customer Account Activity Statements of Ocwen.   The Plaintiffs have not been provided original electronic documents. In fact the so-called Customer Account Activity Statement History of Ocwen records vary from the actual Ocwen statements attached as Exhibit I to the Complaint. Plaintiffs' attorney's IOLTA check was cashed on June 6, 2016 as indicated by the attached bank records in Plaintiffs' prior Motion for Extension of Time to reply  The Ocwen statements dated July 7, 2016 reference a received payment on May 27, 2016, which was placed in suspense on June 13, 2016 not to the loan modification. This is just one of the disparities between the statements, which were the original Ocwen statements, from which the Stage 5 Database was created and this inaccurate export of the actual data on the database. Defendants seek to hide the actual data by insisting that this is an original record.

4

Instead it is a filtered record which does not contain the actual fields and transactions contained in the actual Stage 5 Database.

Very troubling  are the missing documents in the collection and servicing notes, which Plaintiffs have  filed under seal. The servicing notes have a gap of 7 months from July 21, 2015 through February 18, 2016 as indicated on Bates number 10186. The missing seven months indicates that the entire collection notes, particularly at a crucial period of time have not been provided.

Originally, Defendant sought a protective regarding the Hinshaw Culbertson correspondence which was denied. This documentation related to communications with Hinshaw Culbertson, which provided the modification and checks to Ocwen after receipt from Plaintiffs were not provided as indicated in the subpoena. Defendant has falsely asserted that the loan modification was not boarded because it falsely alleges that the down payment was not made to PHH. However this assertion is false because hidden in the middle of the voluminous documents sent to the Plaintiffs' attorney with loan modification were the attached documents dated September 24, 2016  which indicated that the loan modification was rejected because of a Title Company indicating that Providence County being the incorrect County for recording. Ocwen's agent or employee suggested that the modification should have been recorded in Central Falls County not Providence County.  Since there is no Central Falls County, this was a clear cut error and one which

5

Defendant is seeking to cover with the excuse that the payment was not made. In fact as indicated above, payments were made, but were not applied to the loan modification, but instead to suspense.

The Defendant belatedly provided a privilege log. Until recently, PHH .has asserted in Court pleadings that it does not possess any records or communications of the law firm of Hinshaw Culbertson. Defendant has not complied with the subpoena duces tecum served on PHH Mortgage Corporation. This Court denied the Motion to Quash the entire Subpoena and this discovery propounded by the Plaintiffs has not yet been completely responded to by the Defendant.

Loan Servicers' records are contained electronically as part of the servicing file. 12 CFR 1024.38 (c) defines which documents a loan servicer must save and maintain in the servicing file. These documents are defined as follows:

38(c)(2) Servicing file.

1. **Timing.** A servicer complies with§ 1024.38(c)(2) if it maintains information in a manner that facilitates compliance with§ 1024.38(c)(2) beginning on or after January 10, 2014. A servicer is not required to comply with§ 1024.38(c)(2) with respect to information created prior to January 10, 2014. For example, if a mortgage loan was originated on January 1, 2013, a servicer is not required by§ 1024.38(c)(2) to maintain information regarding transactions credited or debited to that mortgage loan account in any particular manner for payments made prior to January 10, 2014. However, for payments made on or after January 10, 2014, a servicer must maintain such information in a manner that facilitates compiling such information into a servicing file within five days.

2. **Borrower requests for servicing file.** Section 1024.38(c)(2) does not

6

confer upon any borrower an independent right to access information contained in the servicing file. Upon receipt of a borrower's request for a servicing file, a servicer shall provide the borrower with a copy of the information contained in the servicing file for the borrower's mortgage loan, subject to the procedures and limitations set forth in § 1024.36.

Paragraph 38(c)(2)(iv).

1. **Report of data fields.** A report of the data fields relating to a borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices means a report listing the relevant data fields by name, populated with any specific data relating to the borrower's mortgage loan account. Examples of data fields relating to a borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices include fields used to identify the terms of the borrower's mortgage loan, fields used to identify the occurrence of automated or manual collection calls, fields reflecting the evaluation of a borrower for a loss mitigation option, fields used to identify the owner or assignee of a mortgage loan, and any credit reporting history.

The missing seven months in the collection notes and the sudden and late assertion of privilege as to an essential issue in this created an undue burden on the Plaintiffs to obtain discovery.   Likewise submitting an affidavit from a witness with no verification of her testimony and reference to the documents she received is not a reasonable response to a subpoena as to which a motion to quash and for a protective Order was already denied. The suggestion that Ocwen )now PHH) has no records regarding any communications from Hinshaw Culbertson or Samuel Bodurtha or Margaret Nash, who transmitted the modification paperwork and checks, which were cashed, is just not plausible, given the prior assertions of privilege of PHH Mortgage.

7

The Plaintiffs have provided under seal examples of a life of the loan MSP LoanSphere Electronic System of record. The PHH life of the loan on MSP has not been provided. Likewise the Defendant did not provide the Ocwen Stage 5 Database, which is the actual format in which the Ocwen records are maintained. Instead, Defendant provided  so-called Payment Reconciliation History for PHH which was exported from the actual unedited record on its electronic system of record. It also provided a Payment Reconciliation History, which it exported from its actual records maintained in the Stage 5 Database. FRCP 34 provides that electronic documents must be provided in the format in which it is maintained:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
>  (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
>  (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

The system of record for PHH is MSP LoanSphere. This format is the format which was referenced in the subpoena. The Defendant can access the actual MSP life of the loan by a simple key stroke on the computer program which will download the entire life of the loan from PHH.  A Reconciliation History provided was exported from the actual loan system and edited as PHH saw fit. Thus the subpoena was not complied with by PHH as to  the PHH Life of the Loan

8

Transactional History as to the Life of the loan for Number 3 and that portion of the servicing file which contains the electronic history for PHH.

Similarly the actual electronic record of Ocwen Loan Servicing referred to a Stage 5 database has not been provided. Ocwen was forced to cease use of RealServicing pursuant to a Consent Order with multiple states, including the State of Rhode Island. A copy of the Consent Order is attached to this Memorandum. In order to continue doing business, Ocwen Loan Servicing merged with PHH Mortgage Corporation. Prior to the merger the Consent Order mandated that a new system had to be utilized due to the inherent inaccuracy of RealServicing. This system was so inaccurate that Ocwen had to enter into agreements, in which it acknowledged the inaccuracies of RealServicing.   Defendants provided an affidavit from Gina Feezer, who without any foundation asserted that PHH did not have to provide the Stage 5 Database, containing the Ocwen records  because she certain unverified contentions.  It is the custom and practice of PHH that no PHH or Ocwen employee changes the "raw data" when pulled from either REALServicing or Black Knight MSP for production of the servicing notes or transaction history such as those that were produced in response to the Subpoena. This assertion verifies that there are actual records in native format, namely the electronic format of the Stage 5 Database.   This witness has testified in a

9

deposition in the United States Bankruptcy Court for the District of Maryland and

has explained how PHH exports the actual data to its reconciliation history:

A Yes. That would be a complete history.
18 Q Okay Exhibit 16, please. Open and
19 confirm if you have seen this document before.
20 A Yes, I have.
21 Q What is it?
22 A It is an export of the transaction
23 history of the time that Ocwen serviced the loan.
24 Q When you call it an "export," can you
25 explain how it's generated?

A so I'm not sure
2 what method they used.
3 But generally it would be a matter of
4 just pulling it up out of the database report and
5 producing it in the format that it was in in Real
6 Servicing, so it would have come from the
7 stage -- the database with the staging
8 information in it, staging table.
9 But, with respect to -- I mean, this is
10 a similar report that I am familiar with pulling
11 through that method, but I'm not sure how this
12 one was pulled or produced.
13 Q What is a staging table?
14 A It's essentially a database that held
15 the fields of information that was populated in
16 the database, so, in order to create a report,
17 you can pull that information from the staging
18 tables based on the format of the report setup.
19 So, there's reports that are set up, the
20 pulled fields, that would have been the report
21 that would have pulled a payment transaction
22 history or Detailed Transaction History or
23 comments, or things of that nature, that's used
24 to be in Ocwen Loan Servicing's database, which
25 was Real Servicing.

10

Thus this witness has previously testified in In Re Fletcher, in the deposition attached to this Memorandum that the Reconciliation History is not the actual records in the Stage 5 database of Ocwen. In this deposition, she did not indicate any familiarity with how the export occurs. She has not testified that she ever exported data. She is a professional witness for Ocwen Financial, not PHH and her credibility is questionable. Particularly when she states falsely that

Based on my review of the Subpoena and PHH's responses, I can confirm that all documents in PHH's possession or control that are responsive to the Subpoena have been produced.

As indicated these records have not been produced. Thus how can she make such a false statement.

Her assertion about the custom and practice requires that the Court accept her testimony as gospel without any verification. A review of the actual raw data on MSP and the Stage 5 database would allow the Plaintiffs and the Court to determine whether this statement is true. She also did not state that in this case the raw data was not changed. Her reference that the electronic fields contained in the Stage 5 data on Ocwen's RealServicing platform were copied onto PHH's Black Knight MSP platform in 2019 when Ocwen and PHH merged and that the information in the fields is not altered or changed during this process.

11

However she did not state that such did not occur in regard to this loan. She carefully avoided this point in her affidavit.      The Plaintiffs subpoenaed actual records not exported summaries of the actual records and should have access to the actual records, not summaries.

The redaction of the Hinshaw Culbertson records are based solely on Gina Feezer's affidavit that they are attorney client records. This privilege is not absolute.   There are clear references to Hinshaw Culbertson in the collection notes of Ocwen,   On Bates 10208 there is a reference to Hinshaw Culbertson and the 2016 modification:

Completed Non-HAMP modification sent to be interfiled in the collateral file
{1}
{2}
{3}
NUMBER redacted
Hinshaw & Culbertson LLP
222 N. LaSalle Street
Suite 300 FD-6
Chicago, IL 60601
UNITED STATES

it should be noted to this Court that no collection notes have been provided for the period  of July 21, 2015 through February 18, 2016. A copy of this segment of the collection and servicing notes makes it clear that the entire notes have not been provided and that they have been provided in an exported format, which PHH has used to eliminate 7 months of records, which period coincides with the 2016 loan

12

modification discussion and execution. Hinshaw Culbertson's transmission of modification documents and payment checks does not constitute privileged documents and Plaintiffs suggest that PHH is refusing to provide  records in order to hide the evidence that this loan modification was approved. In this industry all documents are in the servicing file in the form of collection notes entered by technicians. There are no paper files and there has been no evidence presented by PHH which indicates the person who exported these redacted records and then transmitted them to Defendants' attorneys. Gina Feezer did not state that she did this, nor did she offer any specific evidence about this file, other than generalities unsupported by factual information.

Finally Plaintiffs note that no records of the finances of PHH have been provided. PHH denies that it is a debt collector, despite its Rhode Island Third Party Debt Collector status as indicated by Rhode Island's NMLS records attached to this memorandum. A general internet record of Ocwen Financial, a separate corporation did not comply with the subpoena.

The Plaintiffs should be provided these documents without any further delay. The record indicates that there has been no compliance.   Briefly to summarize, the following documents subpoenaed remain outstanding:

13

1 and 2, the complete servicing file as defined by regulation X, particularly responses from Ocwen or PHH to Notices of Error and the life of the loan as indicated above.

3 the Life of the loan.

5.  Other than generalities and multiple page numbering, this has not been provided. Bates 10918-10950 only contains transactional logs without any reference to a loan modification being denied. Bates 12319-12355 is an updated loan history which has no reference to the 2016 modification.

9. As indicated no records of the business of PHH have been provided.

13.  Has been provided indicating that when Ocwen took over servicing on September 1, 2011, the loan was due for June 1, 2011.

14.    No screen shots have been provided, only summaries and bills. These records are readily available on the PHH MSP system.

15.    No documents have been provided which Ocwen used to  verify the accuracy of the Litton records when it boarded the loan. Defendant was subpoenaed to provide the documents it used to verify the accuracy not to provide the prior records only. The Defendants' attorney's assertions that each of the above-referenced documents confirm the accuracy of the accounting is not evidence nor is it a compliance with the subpoena.

14

16.    No documents have been provided which PHH used to  verify the accuracy of the Ocwen records when it boarded the loan. Defendant was subpoenaed to provide the documents it used to verify the accuracy not to provide the prior records only. The Defendants' attorney's assertions that each of the above-referenced documents confirm the accuracy of the accounting is not evidence nor is it a compliance with the subpoena.

17.    The raw data Stage 5 database, which is the actual record has not been provided.

18.    The loss mitigation and modification documents to and from Hinshaw Culbertson have not been provided, which indicate funds and an executed loan modification going to Hinshaw, which was transmitted to Ocwen. Since the loan modification as executed by Ocwen's legal counsel, it is difficult to see how Ocwen did not receive these documents and have them in the servicing file and how they can be confidential.

19.    Invoices have been provided without any proof of payment to the vendors and law firms.

20-24>    The suggestion that Ocwen's records "dodnot appear to show the name, employer and phone number of the person who deposited letters in the US mail to the Plaintiffs" does not establish that the records are not available. In addition, the subpoena requested not just the mailer but the actual notices.

15

The Walz Group clearly was the mail and postage vendor for PHH.  It chose not to contact the party to whom it contracted mailing duties nor did it provide these notices.

27.    Defendants have raised numerous affirmative defenses and Plaintiff sought documents as to any specific affirmative defense, with some degree of specificity as to which documents support which affirmative defense.

28.    PHH denied the allegation in the complaint that its principal business is the collection of debts. It now states that this is vague and overly broad. However it denied a specific allegation as to the RIFDCPA and will not provide documents on which it denied that its principal business is the collection of debts. The time is the time of the filing of the complaint. Ocwen Financial Corporation is not a third party loan servicer in Rhode Island as all servicing is done by PHH, not a parent corporation and a separate entity.

29.    The entire loan file from Litton was not provided as no LSAMS life of the loan was provided, only a spreadsheet exported from the actual records.

32-33 The Defendants' Motion to Quash requested that no documents be provided. Contrary to the assertions of Defendant that the Motion to Quash the Subpoena did not reference #32 or #33, the Motion specifically stated:

PHH respectfully requests the Court to quash the Subpoena in full because it was served after the fact discovery deadline.

16

The relief requested also stated:

WHEREFORE, PHH respectfully requests that the Court quash Plaintiffs'

Subpoena.

Thus the law of the case doctrine and res judicata precludes Defendant from

objecting to providing these documents. Also to suggest that the terms confirmed

verified the accuracy" is vague is not a reasonable interpretation of this language.

The accuracy of the Ocwen and Litton records had to be reliable and verified. *US*

*Bank National Association v. Jones*, 925 F.3d 534 (First Cir., 2019)   references

FRE 803(6) and records of third parties.   In *Jones*, the Court analyzed the hearsay

rule and whether the testimony of a Caliber Loan Servicing employee and an

exhibit referencing the status of the loan after two prior servicers was properly

admitted under the hearsay rule business record's exception FRE 803(6).  The

issue in *Jones* was whether there was a sufficient foundation under 803(6) for the

current loan servicer employee to testify about the status of the mortgage loan

account and how it was boarded into the electronic system of record of the current

servicer.  In *Jones*, there was live testimony of a witness at a foreclosure trial. The

Court set forth the criteria for the admission of records of another servicer.  The

Court held:

[W]hether a third party's records . . . can be integrated into the records of the
offering entity . . . for purposes of admission under the business records exception
**is not an issue upon which this circuit has reached a uniform conclusion**"

17

covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated"** into the business records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business,**" United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence**, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.**" Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

18

(emphasis added)

These records should thus be provided as well as the identity of the person who verified third party records of Litton and the RealServicing records of Ocwen. PHH and Ocwen act through employees and Plaintiffs requested the identities of the person who verified the third party records.

37.    PHH is the loan servicer and suggests that it does not have the custodial agreement despite its status as loan servicer. In view of the prior inconsistencies and false statements made in response to this subpoena, such assertion is not credible.

39.    Originally PHH moved to Quash this subpoenaed document because it was confidential. If it did not exist, why did PHH file to quash this subpoenaed document? Now it has miraculously been found in Hinshaw Culbertson files and now is protected by attorney client privilege. Plaintiffs seek the documents indicating the transmittal of the modification and checks to and from Hinshaw Culbertston and Plaintiffs, through their attorney. The 2016 modification was signed by Ocwen's legal counsel and mailed to Plaintiffs.  These are not attorney client disclosures, but rather documents indicating that Ocwen received the modificiation signed by Plaintiffs and the initial deposit check (which contrary to PHH's answer was cashed) from Hinshaw Culbertson presumably with a transmittal letter and then sent it back to Hinshaw Culbertson for transmittal to

19

Plaintiffs. There is no privilege involved in this correspondence. Hinshaw merely acted as a conduit for mail, checks and modification. These transmittals are not privileged and should be provided.

The Defendants have willfully refused to provide documents which were subpoenaed by the Plaintiffs and as to which this Court has previously denied a Motion to Quash the Subpoena. It took numerous requests to obtain certain documents and the privilege log is woefully lacking as it was sent after the response and did not really address the issues. The self serving affidavit of Gina Feezer should be disregarded and stricken. If considered, Plaintiffs should be allowed to depose her to determine the extent of PHH's compliance or lack thereof. PHH has a history of refusing to comply with discovery. The Plaintiffs initially were dumped more than 10,000 pages without meaningful reference. The process has gone on with no real response and continued obstruction. For these reasons this Court should consider a sanction of default for willful obstruction and contempt in regard to this subpoena. In the alternative a Conditional Order of Default should also be considered. In both alternatives, Plaintiffs should be provided legal fees and costs attributable to the time incurred in regard to this Motion. They sought to use their overwhelming legal resources to obfuscate the records and do everything but provide the actual records. These records are clearly relevant and crucial to this case. The Plaintiffs request a hearing on this Motion.

20

July 7, 2023

                              WAGNER JACINTO
                              CESILIA RODRIGUEZ
                              By their attorney,

                              /s/ John B. Ennis
                              John B. Ennis # 2135
                              1200 Reservoir Avenue
                              Cranston RI 02920
                              (401) 943-9230
                              Jbelaw75@gmail.com

## CERTIFICATE OF SERVICE

I certify that a copy of this Memorandum was served on all attorneys of record on

July 7, 2023 by electronic filing.

/s/ John B. Ennis

21