| In the Matter of | § | |
| | § | **BEFORE CAROLINE C. JONES** |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| | § | **SAVINGS AND MORTGAGE** |
| | § | **LENDING COMMISSIONER** |
| **Respondent** | § | **AUSTIN, TEXAS** |
| **NMLS ID:** 1852 | § | |
| **File Number:** 170612 | § | |
| | § | |

## CONSENT ORDER

## A. PARTIES AND JURISDICTION

1.    Ocwen Financial Corporation ("OFC") is a Florida corporation with headquarters in West Palm Beach, Florida. Ocwen Mortgage Servicing, Inc. ("OMS") is a U.S. Virgin Islands corporation with headquarters in St. Croix, U.S. Virgin Islands and an NMLS unique identifier of 1089752. Ocwen Loan Servicing, LLC, ("OLS") is a Delaware limited liability company with headquarters located in West Palm Beach, Florida and an NMLS unique identifier of 1852. OLS at all relevant times herein was a wholly-owned subsidiary of OMS, which was a wholly-owned subsidiary of OFC (collectively referred to herein as "Ocwen").

2.    OLS is registered by the Department of Savings and Mortgage Lending ("Department") as a residential mortgage loan servicer under chapter 158 of the Texas Finance Code and licensed as a residential mortgage loan company under chapter 156 of the Texas Finance Code.

3.    The Department has jurisdiction over the registration and regulation of persons and entities engaged in the business of residential mortgage loan servicing in Texas, pursuant to Texas Finance Code § 158.051 and the implementing rules at 7 Texas Administrative Code § 79.1 *et seq.* The Department also has jurisdiction over the licensing and regulation of residential mortgage loan companies in Texas, pursuant to Texas Finance Code § 156.101 and the implementing rules at 7 Texas Administrative Code § 80.1 *et seq.*

## B. FACTS

4.      The Department, pursuant to its authority under chapter 158 of the Texas Finance Code, issued an Order to Cease and Desist on April 20, 2017 ("Order to Cease and Desist") that alleged violations of chapter 158 of the Texas Finance Code and 7 Texas Administrative Code, chapter 79.

5.      Ocwen timely requested a hearing on the Order to Cease and Desist.

## C. CONSENT ORDER

6.      The Department and Ocwen are executing this Consent Order ("Consent Order") to avoid further proceedings. By entering into this Consent Order, Ocwen does not admit to the allegations of the Order to Cease and Desist other than those facts deemed necessary to evidence the authority of the Department.

7.      Ocwen and the Department have agreed to this Consent Order to resolve the Order to Cease and Desist in its entirety. This Consent Order resolves only those issues raised in the Order to Cease and Desist and does not alter or set aside any other orders, settlements, or Consent Orders between Ocwen and the Department. Further, should new issues arise not addressed by either the Order to Cease and Desist or this Consent Order, nothing in this Consent Order precludes the Department from taking further administrative action.

8.      This Consent Order may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Consent Order.

## D. CONSENT ORDER

It is ordered that:

9.      Upon entry of this Consent Order, Ocwen will promptly take the actions described in Exhibit A and Exhibit B, which are hereby incorporated into this Consent Order.

10.      The Request for Proposal referenced in Exhibit A is attached and incorporated as Exhibit B.

11.     Ocwen will make available Michael Hollerich, Chief Compliance Officer, at michael.hollerich@ocwen.com or (561) 682-7164 as its dedicated representative to answer questions and to provide information regarding Ocwen's compliance with this Consent Order.

12.     Ocwen will provide an experienced representative to work directly with the Department to address written complaints from Texas consumers and/or any complaints escalated to the company directly by the Department. Ocwen will also provide a senior executive in its Compliance, Legal, or Ombudsman Department to discuss escalated matters. Ocwen will identify these representatives on or before November 1, 2017.

13.     Ocwen will provide a quarterly report to the Department listing all new written borrower complaints received by Ocwen during the preceding calendar quarter and updates regarding the progress of processing previous complaints until those complaints have been resolved.  The report will also include a summary of the resolution for closed complaints, including any remediation provided to the consumer.  The first report is due on November 15, 2017, and fifteen (15) days after the end of each subsequent calendar quarter, with the last report due October 15, 2019.

14.     Ocwen will develop a dedicated escrow hotline where Texas consumers can direct escrow related inquiries.  This hotline will be staffed by United States-based personnel and will be available weekdays (excluding holidays) from 9:00 am Central Time to 5:00 pm Central Time. Ocwen will implement the hotline in a manner so that it is operational not later than January 1, 2018 and maintain the hotline for a period extending to three months following the transfer of all residential mortgages from the REALServicing platform to Ocwen's new servicing platform. Ocwen will include the hotline telephone number on periodic monthly billing statements for all Texas borrowers during the period in which the hotline is required to be operational.

15.     In 2018, Ocwen will partner with non-profit organizations to participate in two loss mitigation outreach events and partner with local housing counselors to implement a targeted loss mitigation mailing campaign designed to benefit at risk Texas borrowers.

16.     Ocwen will engage a third party company to review and report on the accuracy of Ocwen's preparation of its Annual Escrow Account Disclosure Statement. For a period of twelve months, the third party will review 25 randomly selected Annual Escrow Account Disclosure Statements sent to Texas borrowers. The third party will use the methodology set forth in Section 2.1(b)(3)-(10), (12) of Exhibit B to confirm that the Annual Escrow Account Disclosure Statements are accurate. The independent reviews shall commence December 2017 for Annual Escrow Account Disclosure Statements prepared during October 2017 and ending December 2018 for Annual Escrow Disclosure Statements prepared during October 2018. The third party will provide a monthly report to the Department within 60 days from the end of each month.

17.     The Department agrees that, provided Ocwen complies with the terms of the Consent Order, it will not seek additional penalties related to the allegations contained in the Order to Cease and Desist or the escrow review process described in Exhibits A and B. However, nothing in the Consent Order prohibits the Department from taking administrative action on new issues discovered during the pendency of the Consent Order, or thereafter.

18.     The terms of the Consent Order may be enforced by the Department pursuant to chapter 158 of the Texas Finance Code and 7 Texas Administrative Code, chapter 79, but the Department will provide Ocwen with an opportunity to meet and confer to discuss and attempt to resolve any allegations that Ocwen has violated the Consent Order seven calendar days before taking any action to enforce the Consent Order.

19.     For the purposes of the Consent Order, and the requirements set forth in Exhibits A and B, the designated representative for the Department will be Tony Florence, tflorence@sml.texas.gov.

20.     Within five (5) business days of the date of entry of this Consent Order, responses to the Regulatory Action Disclosure Questions on the MU-1 filing on the NMLS shall be updated to reflect the existence of this final administrative action against Ocwen and the restrictions set forth herein.

21.     This Consent Order shall be regarded as a public document that the Department may publish in the same manner as a final order of this agency.

ISSUED this _17_ day of October, 2017 at Austin, Travis County, Texas.

_____

Caroline C. Jones

Savings and Mortgage Lending Commissioner
Department of Savings and Mortgage Lending

For Ocwen Loan Servicing, LLC:


Timothy M. Hayes
Executive Vice President

# Exhibit A

I.    MORTGAGE SERVICING RIGHTS RESTRICTION.

    a.  MORTGAGE SERVICING RIGHTS RESTRICTION. Except as set forth in paragraphs (b), (c) and (e) below, Ocwen Financial Corporation and its subsidiaries and affiliates (collectively, "Ocwen") shall not acquire any residential mortgage servicing rights (MSRs) until April 30, 2018.

    b.  REALSERVICING RESTRICTION. Ocwen shall not board any new loans onto the REALServicing platform at any time. This restriction does not apply to loans that are (i) already serviced on the REALServicing platform, including those that are subsequently modified or those that are subsequently converted to an arrangement whereby Ocwen acts as sub-servicer, or (ii) required to be repurchased by Homeward Residential, Inc. or Ocwen.

    c.  NEW ORIGINATIONS. Ocwen may originate through broker, retail, or wholesale, or acquire through correspondent lender relationships, new residential mortgage loans, including, but not limited to, traditional mortgage loans, and reverse mortgages so long as they will not be boarded, even temporarily, to the REALServicing platform. Any such loans must, instead, be sub-serviced by an unaffiliated, licensed and/or exempt entity, although Ocwen may retain the associated MSRs. Until April 30, 2018, any growth through acquisition from correspondent relationships must be limited to no more than ten (10) percent per calendar year of the total number of loans held by Ocwen at prior calendar year end.

    d.  NEW SERVICING PLATFORM. Ocwen shall develop a detailed Plan of Action and Milestones (POAM) for the transfer of all residential mortgages currently administered on the REALServicing platform to other servicing platform(s) that will enable Ocwen to comply with applicable mortgage servicing standards for its residential mortgage portfolios. The POAM shall include a timeline for accomplishing each milestone in the POAM in order to complete the transfer within a commercially reasonable time. The proposed POAM shall be submitted to the designated representative of the state regulator identified in the Consent Order ("State Regulator"). Ocwen shall provide to the designated representative quarterly updates on the POAM until the transfer of all residential mortgages has been completed.

    e.  POTENTIAL MERGER OR ACQUISITION PROVISIONS. In the event that Ocwen chooses to merge with or acquire an unaffiliated company or its assets in order to effectuate a transfer of loans from the REALServicing platform, Ocwen must give the State Regulator thirty (30) days prior notice to the signing of any final agreement and the opportunity to object within thirty (30) days from such notice. If no objection is received, the provisions of paragraph (a) above shall not prohibit the transaction, including the related transfer of MSRs or mortgage loans between the companies, or limit the transfer of loans from the REALServicing platform onto the merged or acquired company's alternate servicing platform. In the event that an unaffiliated company merges with or acquires Ocwen or Ocwen's assets, none of

2

the above paragraphs within this Section I shall prohibit said transaction, including the related transfer of MSRs or mortgage loans between the companies, or limit the transfer of loans from the REALServicing platform onto the merging or acquiring company's alternate servicing system.

II.     ESCROW REVIEW PROCESS.

    a.  SCOPE OF ESCROW REVIEW. Ocwen will employ an independent third-party auditor ("Auditor") to review all escrow transactions on the REALServicing platform, in a representative sample of escrowed loans serviced by Ocwen in the signatory states (identified in Appendix A to the Audit Plan, as defined in Paragraph II.c.) between January 1, 2013 and June 30, 2017, as set forth in II.c. below.

    b.  INDEPENDENT THIRD-PARTY AUDITOR. Ocwen has generated a request for proposal ("RFP") setting forth information about the Auditor's engagement and defining the specific escrow transactions to be reviewed. The states had an opportunity to review and object to the RFP. Ocwen will select the Auditor and notify the signatory states of the proposed Auditor. Ocwen will engage the Auditor within ten (10) days of notification to the signatory states unless the signatory states object to the Auditor. If the signatory states object, the parties will make a good faith effort to promptly resolve any objections, including potential engagement of a different entity as the Auditor.

    c.  AUDIT PLAN. The Auditor's testing methodology shall be consistent with the RFP and shall be set forth in a plan ("Audit Plan") agreed to by Ocwen and the Auditor and not objected to by the signatory states. The Audit Plan will be submitted to the signatory states within sixty (60) days of the Auditor's engagement, unless otherwise agreed to by the parties, and the states must submit any objections within ten (10) days after submission. The Audit Plan must be completed by February 1, 2018, and the Auditor must begin testing by March 1, 2018. The Auditor may revise the Audit Plan to the extent revisions become necessary during its testing, provided it is consistent with the RFP and provided Ocwen agrees to the revision and the signatory states do not object to the revision.

    d.  SAMPLING METHODOLOGY.

        i.  REPRESENTATIVE REVIEW. The Auditor will review a random, statistically significant sample of escrowed loans. The population of escrowed loans is limited to those where the property is located in one of the signatory states. The statistically significant sample size shall be at a 95% confidence level, 5% expected margin of error, and 2% precision level. The sample of loans will be allocated on a pro-rata basis amongst the signatory states based on the percentage share for each state, with every signatory state having at least five (5) loans reviewed. If any state has less than five (5) loans sampled as a result of the pro-rata allocation, additional loans shall be sampled to ensure that each state has at least five (5) loans

reviewed, but without a commensurate increase for a signatory state not subject to the minimums described above.

ii.  STRATIFIED REVIEW. The Auditor will review a statistically significant sample of each of the identified strata at a 95% confidence level, 5% expected margin of error, and 2% precision level.

1.  The identified strata are divided into two categories: 1) "Pro-Rata Allocation Only" and "Pro-Rata Allocation Plus."

2.  The Pro-Rata Allocation Only strata are:
    a.  HOA foreclosures,
    b.  second liens,
    c.  loans with biweekly payments, and
    d.  current loans with either positive or negative escrow balances greater than $10,000.

3.  The Pro-Rata Allocation Plus strata are
    a.  ARMs,
    b.  loans 60+ days past due,
    c.  HAMP modifications,
    d.  Shared Appreciation modifications (SAM loans),
    e.  non-HAMP modifications,
    f.  bankruptcy,
    g.  loans with PMI only,
    h.  loans with flood insurance,
    i.  condo master policy loans,
    j.  loans with negative escrow balances when transferred,
    k.  loans with negative escrow balances for 3+ consecutive months,
    l.  loans with borrower complaints,
    m.  loans with capitalized escrow, and
    n.  loans with lender placed insurance.

4.  For the Pro-Rata Allocation Only strata, the Auditor will ensure the strata testing population is allocated on a pro-rata basis amongst the signatory states based on the percentage of Ocwen's overall portfolio attributable to each state.

5.  For the Pro-Rata Allocation Plus strata, the pro-rata allocation will be adjusted, as necessary, to ensure the Auditor reviews at least five (5) escrowed loans per strata for each signatory state.

6.  To the extent the Auditor increases the Pro-Rata Allocation Plus sample to meet the minimums described above, the overall population will also increase, without a commensurate increase in

the Pro-Rata Allocation Plus for a signatory state not subject to the minimums described above.

e.  TESTING METHODOLOGY. In accordance with the testing methodology provisions of the RFP, the Auditor will identify instances where Ocwen did not administer an escrow account for a sampled loan in compliance with laws governing escrow under the Real Estate Settlement Procedures Act, as implemented by Regulation X, the Truth in Lending Act, as implemented by Regulation Z, and the Homeowners Protection Act ("Error"). For each Error found, the Auditor will, to the extent the information is reasonably accessible, set forth:

   i.  the name of the borrower,
   ii.  the state where the property is located,
   iii.  the nature of the error,
   iv.  the date of the Error,
   v.  the date Ocwen first became aware of the Error,
   vi.  how the Error came to Ocwen's attention (internal process, third-party notification, consumer complaint, regulatory agency, etc.),
   vii.  an analysis of whether the error caused financial harm, including
        1.  basis for determination, and
        2.  the amount of any harm.
   viii.  if the Error was remediated, and, if so, how and when it was remediated.
   ix.  For any unidentified or unremediated Errors, the Auditor must provide information regarding why the Error was not identified and/or remediated. During the review, the Auditor will also determine if the Error caused any financial harm to the borrower.

f.  CORRECTIVE ACTIONS. If the Auditor identifies Errors previously remediated by Ocwen, regardless of whether they resulted in financial harm as defined in the Audit Plan, the Auditor will confirm that the corrective actions were sufficient to: (1) remediate the Error, and remediate any other similarly impacted borrowers, and (2) prevent the Error from recurring. Ocwen will provide the state signatory representative with documentation of any corrective actions to address any previously remediated Errors. Should the Auditor determine that Ocwen did not fully remediate the Error(s) and/or that Ocwen has not taken sufficient corrective action to prevent the Error(s) form recurring, then Ocwen shall submit within 60 days of Escrow Report a corrective action plan (including remediation if applicable) to be approved by the state signatory representative. If the Auditor identifies a non-remediated Error, Ocwen shall submit within 60 days of Escrow Report a corrective action plan to be approved by the state signatory representative that will remediate the Error, and remediate any other similarly impacted borrowers, including the provision of restitution to fully correct financial harm, and/or to prevent the Error from recurring. In the event Ocwen implements remediation to address a non-remediated Error, the Auditor will review a statistically valid sample of borrowers potentially impacted by each root cause to confirm the remediation efforts were successfully completed. In all instances, the Auditor will confirm that Ocwen's corrective action plans and remediation efforts are sufficient and no loan shall be

boarded onto a new system pursuant to the POAM with a known, unremediated error.

g. ESCROW REPORT. The Auditor will generate a report setting forth the results of its audit ("Escrow Report"), pursuant to the timeframes agreed upon in the Audit Plan. The Escrow Report will identify any information that, in the Auditor's opinion, is relevant to its report. At a minimum, the Escrow Report will include the information described in Paragraphs II.(d)-II.(f) of this Agreement. The final report, and any drafts, shall be provided simultaneously to Ocwen and the signatory states. Ocwen shall have the right to submit written comments to the Auditor, which shall be appended to the final version of the Escrow Report.

III.   COMPLAINT PLAN

a. No later than sixty (60) days after this Consent Order is issued by the State Regulator, Ocwen shall submit to the State Regulator for review and determination of non-objection a comprehensive consumer complaint resolution plan ("Complaint Plan") designed to ensure that the company will properly document, timely investigate and remediate consumer complaints as defined in 12 CFR 1024.35. The Complaint Plan shall include, at a minimum:

   i. robust, board-approved policies and procedures to ensure that all consumer complaints are documented and timely investigated, any errors found as a result of a complaint are remediated, and errors found that may impact other accounts are escalated for further investigation and/or remediation;
   ii. a formal internal review process to ensure all complaints are processed in accordance with the policies and procedures adopted under this Complaint Plan;
   iii. training on revised complaint procedures for all employees no later than 180 days from the date of this order;
   iv. a program establishing annual, mandatory complaint resolution training for employees who may receive any form of complaint from a consumer or are otherwise involved in the complaint resolution process; and
   v. detailed steps for addressing each action required by the Complaint Plan.

IV.   FINANCIAL CONDITION.

a. ONE YEAR FINANCIAL CONDITION PLAN. Within thirty (30) business days, Ocwen will submit a written plan demonstrating how it will remain a going concern for a period of one (1) year from the Effective Date of this Order ("One-Year Financial Condition Plan"). The One-Year Financial Condition Plan, at a minimum, must take into account, in accordance with Generally Accepted Accounting Principles, all known and reasonably anticipated future liabilities including, but not limited to, costs of necessary audits and anticipated regulatory, law enforcement, or other litigation liabilities or costs exceeding one (1) million dollars arising from

any final orders/judgments or settlements and must also demonstrate how Ocwen will comply with all applicable liquidity and capital requirements.

b.  THREE YEAR FINANCIAL CONDITION PLAN. Ocwen previously submitted to the MMC a three (3) year financial condition plan ("Three-Year Financial Condition Plan"), which must be updated by Ocwen on or before September 30, 2017 and each signatory state shall receive a copy of the updated report.

c.  ONGOING FINANCIAL CONDITION REPORTING. Ocwen will provide additional updates every six (6) months going forward for a period of three (3) years, unless a signatory state releases Ocwen from this requirement earlier. Ocwen shall notify each signatory state if and when any event occurs that could materially impact Ocwen's financial condition, including, but not limited to, any actual or anticipated liabilities or costs exceeding five (5) million dollars or if Ocwen drops below or projects to drop below any applicable liquidity or capital requirement, within ten (10) business days of the occurrence of any such event(s). Ocwen will submit the following reports with the One-Year Financial Condition Plan, and Ocwen will continue to submit these reports for a period of three (3) years and one (1) month from the Effective Date of this Agreement:

  i.  Monthly financial statements that track actual earnings compared to forecasted earnings during the same time period, to be submitted to each signatory state for each month on or before the last day of the following month;

  ii.  A monthly liquidity report that demonstrates daily liquidity tracking with forecasts on liquidity positions over thirty (30), sixty (60), and ninety (90) days, to be submitted to each signatory state on or before the fifteenth (15th) day of each month;

  iii.  A monthly report documenting compliance with internal policies and procedures governing limits on exposure to market risk, including, but not limited to, interest rate risk, to be submitted to each signatory state for each month on or before the last day of the following month; and

  iv.  A quarterly going concern analysis, which shall include covenant and capital reporting that tracks any and all financial or regulatory covenants Ocwen is obligated to comply with and whether Ocwen remains in compliance with those covenants, to be submitted to each signatory state forty-five (45) days after the end of each calendar quarter, with the exception of the last quarterly report for each calendar year, which shall be submitted ninety (90) days after the end of such quarter.

d.  ACKNOWLEDGEMENT OF RECEIPT. Each signatory state will designate a point of contact to whom Ocwen will submit the documents described in Section IV of this Agreement. Such person must acknowledge receipt of the documents within fifteen (15) calendar days of Ocwen's submission. In addition, the signatory states will identify any alleged deficiencies in the reports within sixty (60) calendar days of Ocwen's submission. The parties will make a good faith effort to promptly resolve any alleged deficiencies.

7

   e.  RELEVANT ENTITY.  Ocwen will submit the documents described in Section IV of this Agreement for Ocwen Financial Corporation.

# Exhibit B

RFP Number: 2017-0912-RSK

# Ocwen Financial Corporation

## CONFIDENTIAL REQUEST FOR PROPOSAL

## Escrow Practices Risk Assessment

September 12, 2017

# Table of Contents

**1    RFP General Guidelines** ................................................................................ **3**

1.1    *Invitation – Notice of Intent* .................................................................................. *3*

1.2    *Single Point of Contact* ........................................................................................ *3*

1.3    *Schedule of RFP Activities* .................................................................................... *3*

1.4    *Acknowledgement* ................................................................................................ *3*

1.5    *Due Diligence Package (DDP) Questionnaire* ........................................................ *4*

1.6    *Questions/Clarifications* ....................................................................................... *4*

1.7    *Proposal Submission* ............................................................................................ *4*

**2    Project Details** ........................................................................................... **4**

2.1    *Overview* .............................................................................................................. *5*

2.2    *Scope of Engagement* .......................................................................................... *15*

**3    Vendor Selection** ....................................................................................... **16**

3.1    *Selection Criteria* ................................................................................................ *16*

3.2    *Administrative or Judicial Proceedings* ................................................................ *16*

3.3    *Business Capabilities* ........................................................................................... *17*

3.4    *Fees* .................................................................................................................... *17*

3.5    *References* ........................................................................................................... *17*

3.6    *Standard Agreement* ............................................................................................ *17*

**4    RFP Terms and Conditions** ........................................................................ **18**

4.1    *Right to Select* ..................................................................................................... *18*

4.2    *General terms* ...................................................................................................... *18*

**5    Company profile** ........................................................................................ **18**

# 1  RFP General Guidelines

## 1.1   Invitation – Notice of Intent

Ocwen Financial Corporation and its affiliates (collectively, "Ocwen") invite selected bidders (each a "Bidder" and collectively, the "Bidders"), to submit competitive proposals in accordance with the requirements of this Request for Proposal ("RFP") for fulfillment of the project described in Section 2 hereof.

## 1.2   Single Point of Contact

Bidders shall submit all communication with Ocwen related to or in connection with this RFP via e-mail to the following single point of contact ("SPOC"):

*Attention:*   Redacted
*E-mail:*        Redacted
*Phone:*  Redacted

Ocwen reserves the right to disqualify Bidders who fail to comply with the procedure detailed in this Section 1.2 at Ocwen's sole discretion and without notice. All correspondence should have the words "Ocwen- RFP" along with the RFP number in the subject line. Any verbal or written statements regarding this RFP by any person other than the SPOC are unauthorized and Bidders should not rely on such communication.

## 1.3   Schedule of RFP Activities

The following table presents the planned schedule for major activities associated with this RFP including, without limitation, distribution, acknowledgement, questions and proposal submission. Ocwen reserves the right to change the timetable, including the associated dates and times at Ocwen's sole discretion.

| Milestone | Date | Time |
|---|---|---|
| Distribution of RFP | 09/12/17 | |
| Acknowledgement | 09/13/17 | 12:00   P.M. ET |
| Due date for questions | 09/14/17 | 6:00 P.M. ET |
| Estimated date of response | 09/15/17 | |
| Due date for  proposals | 09/30/17 | 5:00 P.M. ET |

## 1.4   Acknowledgement

Bidders are expected to acknowledge receipt of this RFP by populating the below table and emailing the Bidder's response to the SPOC by September 13th, 2017 by 12:00 est. Please also acknowledge that upon winning the bid, the contract needs to be executed within 10 business days of acceptance.

| Date | |
|---|---|
| Bidder's name  (complete legal entity) | |
| Website | |
| Business contact name | |
| Phone number | |
| E-mail address | |
| Fax number | |
| Do you intend to submit a proposal? (Y/N) | |
| Reasons for declining to submit a proposal | |

## 1.5   Questions/Clarifications

Ocwen will accept questions from Bidders seeking clarification of this RFP's content until **September 14th, 2017 at 6:00 p.m. ET.**  Bidders may only submit questions regarding the RFP to the SPOC in writing.  Bidders shall not contact any other Ocwen employee regarding this RFP.  All inquiries to the SPOC shall include:

- RFP name and number
- Bidder's name
- A clear and concise question
- References to specific points within this RFP

## 1.6   Proposal Submission

- Ocwen will accept proposals in response to this RFP until **September 30th, 2017 at 5:00 p.m. ET** (the "Submission Deadline").  Ocwen will not grant extensions to this date and time.
- Bidders shall submit complete proposals in writing to the SPOC via e-mail in Microsoft Word and Microsoft Excel formats, where applicable.
- Bidders shall provide comprehensive and focused proposal that provide the information requested in the RFP. Bidders may provide information of general interest, i.e., marketing brochures, annexed to the response document.
- Bidders shall conspicuously identify any proposals or portions thereof that deviate or fail to address the requirements specified in this RFP.
- Bidders shall submit proposals containing clear organization of pages, sections and attachments. All proposals must remain valid for a minimum of one hundred eighty (180) days from the Submission Deadline.
- Bidders shall submit proposals in English.
- Ocwen reserves the right to reject proposals that Ocwen deems incomplete or non-responsive to the requirements of this RFP without notice to Bidders.

# 2   Project Details

## 2.1  Overview

Ocwen issues this RFP with the purpose of engaging an **auditor** that will provide independent escrow account review services to Ocwen, as defined in this Section 2.

<u>Methodology and Scope</u>

    a.   <u>Population and Statistical Sampling Methodology</u>

Each population of loans will consist of (1) escrowed mortgage loans (2) serviced on the REALServicing Platform (3) at some point from January 1, 2013 through June 30, 2017 (4) where the secured property is located in one of the signatory states ("General Population Criteria"). The auditor will calculate the size of a statistically significant sample using a 5% expected margin of error, and 2% precision level.

        i.   <u>Representative Review</u>

The auditor will test one statistically significant sample of loans that meet the General Population Criteria.  The sample of loans will be allocated on a pro-rata basis amongst the signatory states based on the percentage share for each state, with every signatory state having at least five loans reviewed. The allocation will be adjusted, as necessary, to ensure the auditor reviews at least five escrowed loans for each signatory state.  To the extent the auditor increases the sample size to meet the minimums described above, the overall sample size will also increase, without a commensurate increase in the Pro-Rata Allocation Plus for a signatory state not subject to the minimums described above.

        ii.   <u>Stratified Review (Pro-Rata Allocation)</u>

The auditor will test four statistically significant samples of loans that meet the General Population Criteria where one of the additional criteria listed below exists at some point from January 1, 2013 and June 30, 2017:

- Stratification 1: HOA foreclosures
- Stratification 2: Second liens
- Stratification 3: Loans with a biweekly payment plan
- Stratification 4: Current loans with either positive or negative escrow balances greater than $10,000

Each stratification will be allocated on a pro-rata basis amongst the signatory states based on the percentage share for each state.

        iii.   <u>Stratified Review (Pro-Rata Plus Allocation)</u>

The auditor will test fourteen statistically significant samples of loans that meet the General Population Criteria where one of the additional criteria listed below exists at some point from January 1, 2013 and June 30, 2017:

- Stratification 5: Adjustable Rate Mortgage
- Stratification 6: Greater than 60 days past due
- Stratification 7: HAMP modification implemented*
- Stratification 8: Shared Appreciation Modification ("SAM") implemented*
- Stratification 9: Modifications other than a HAMP or SAM modification implemented*
- Stratification 10: Borrower filed bankruptcy
- Stratification 11: Private mortgage insurance

- Stratification 12: Flood insurance
- Stratification 13: Condominium master policies
- Stratification 14: Negative escrow balances at time of transfer
- Stratification 15: Negative escrow balances for 3 or more consecutive months
- Stratification 16: Borrower complaints**
- Stratification 17: Capitalized escrow
- Stratification 18: Lender placed insurance

Each stratification will be allocated on a pro-rata basis amongst the signatory states based on the percentage share for each state. The allocation will be adjusted, as necessary, to ensure the auditor reviews at least five escrowed loans per strata for each signatory state. To the extent the auditor increases the sample size to meet the minimums described above, the overall sample size will also increase, without a commensurate increase in the Pro-Rata Allocation Plus for a signatory state not subject to the minimums described above.

*Implemented is defined as a modification that has been requested and approved to begin a trial payment plan.

**Borrower complaints include those submitted to Ocwen's Ombudsman Department, including complaints received by the Ombudsman Department via email, mail, or phone, provided loans with such complaints can be identified systematically.

b.  <u>Testing Methodology</u>

The following bullets apply to sections 2.1.b, 2.1.c, and 2.1.d of this RFP:
- Testing will be limited to escrow transactions that occurred and/or statements that were issued while the loan was serviced on the REALServicing platform from January 1, 2013 through June 30, 2017.
  - Some loans will have an escrow account only during certain points in the review period. Testing will be limited to escrow transactions that occurred and/or statements that were issued during the time frames when an escrow account existed for the sampled loan.
- For the purposes of section 2.1.b, Ocwen is defined as Ocwen and its vendors, where applicable.
- Ocwen may disburse amounts from the escrow account to cover multiple items (*e.g.* hazard insurance, flood insurance, private mortgage insurance, HO6 insurance, county taxes, city taxes, etc.) or it may disburse amounts to cover only one item.
- In the event the auditor determines an error occurred and/or that an error caused harm, Ocwen will have the opportunity to present evidence to establish an error did not occur, the error was not the result of an action taken by Ocwen or its vendors, and/or that the error did not cause harm. The auditor must consider such evidence before making a final determination. However, for purposes of this report, the auditor has sole discretion and authority to determine whether an error has occurred and whether that error has caused harm.
- Error means any instance where the auditor, using the testing methodology defined in section 2.1.b of this request for proposal, determines Ocwen did not administer an escrow account for a sampled loan in compliance with laws governing escrow under the Real Estate Settlement Procedures Act, as implemented by Regulation X, the Truth in Lending Act, as implemented by Regulation Z, the Homeowners Protection Act, or any applicable state law related to escrow.
  - Ocwen, especially in the context of escrow disbursements, must sometimes rely on actions of third parties who are beyond its control (*e.g.* the borrower's preferred insurance carrier, state taxing authorities, etc.). In some instances, the actions or inactions of these third parties prevent Ocwen from satisfying the tests set forth in Section 2.b of this RFP. For example, the borrower's preferred insurance provider might not inform Ocwen of the need for a disbursement until the day the disbursement is actually due. In order to account for these circumstances, it is not an error if Ocwen's failure to satisfy the test occurred because of the action, inaction, and/or delay of a party other than Ocwen or its

vendors. The auditor has sole discretion and authority to determine whether Ocwen was not able to satisfy the test because of the action, inaction, and/or delay of a party other than Ocwen or its vendors and may communicate with third-party companies to the extent necessary to confirm the circumstances of the error.

- o State laws are applicable if they are identified by a signatory state prior to the auditor accepting the engagement, cover topics similar to the topics tested in Section 2.b of this RFP, and provide greater protections to consumers than federal law. To the extent state laws are applicable, the testing methodology in Section 2.b of this RFP will be adjusted to assess compliance with the applicable state laws.

- A borrower can be harmed both financially and through the inconvenience of resolving the error. Financial harm is any fee, charge, payment, or increased mortgage payment the borrower would not otherwise have paid or been charged had the error not occurred. For purposes of this review only, the auditor may assume the borrower was inconvenienced by an error. Additionally, if a lender placed insurance policy is issued due to an error by Ocwen, for the purposes of this review only, the borrower will be deemed to have experienced policy harm, regardless of the cost of such policy. For each error identified, the borrower may experience one, two, or all three types of harm described herein.
  - o As discussed above, Ocwen will have an opportunity to present evidence that an error did not actually cause financial harm, inconvenience, or policy harm.
- In performing its testing, the auditor will consider evidence as it existed at the time of the transaction or statement being tested.

Timeliness of Disbursements

The following bullets apply to the Timeliness of Disbursements section:

- The requirements in this section do not apply if the Auditor determines that the payment was not made in accordance with the narrow exceptions set forth in 12 CFR 1024.17(k) and any applicable state laws.

1. Timely Disbursements of Hazard Insurance Premiums
   a. Did Ocwen disburse borrower hazard insurance payments before the date on which a penalty was assessed to the borrower? 12 CFR 1024.17(k)(1),(2); 12 CFR 1024.34(a)
      i. A penalty is not assessed to the borrower as long as: Ocwen disbursed a premium from the borrower's escrow account, provided the borrower had an escrow account for hazard insurance and either: (1) the borrower's preferred policy was not cancelled; (2) the borrower's preferred policy was canceled for a reason other than Ocwen's failure to disburse funds from a borrower's escrow account; or (3) if the borrower's policy was canceled because Ocwen failed to disburse funds from a borrower's escrow account, the borrower's preferred insurance carrier reinstated the same policy or rewrote a policy with the same terms and premium, and Ocwen did not assess any required late charge to the borrower.
         1. For clarification, it is a penalty to the borrower if, despite having an escrow account for hazard insurance, they have to pay their own hazard insurance premium in order to avoid penalty or cancellation.
2. Timely Disbursement of Taxes
   a. Did Ocwen disburse all taxes before the date on which a penalty was assessed to the borrower? 12 CFR 1024.17(k)(1),(2),(3),(4); 12 CFR 1024.34(a)
      i. If the taxing jurisdiction offers Ocwen a choice between annual and installment disbursements, Ocwen must comply with the requirements below.

1. If the taxing jurisdiction neither offers a discount for disbursements on a lump sum annual basis nor imposes any additional charge or fee for installment disbursements, Ocwen must make disbursements on an installment basis.

2. If, however, the taxing jurisdiction offers a discount for disbursements on a lump sum annual basis or imposes any additional charge or fee for installment disbursements, Ocwen may, at its discretion, make lump sum annual disbursements in order to take advantage of the discount for the borrower or avoid the additional charge or fee for installments.

   ii. A penalty is not assessed to the borrower as long as: Ocwen disbursed funds for taxes from the borrower's escrow account, provided the borrower had an escrow account for taxes and either (1) relevant evidence, including data obtained from Ocwen's vendor, indicates Ocwen was not required to disburse a late charge imposed by the payee for paying after the disbursement is due or (2) Ocwen's system indicates that any late charge imposed by the payee for paying after the disbursement is due was credited to the borrower's account before the borrower payment was impacted by the penalty.

      1. For clarification, it is a penalty to the borrower if, despite having an escrow account for taxes, they have to pay their own taxes in order to avoid a late charge or property lien.

### Escrow Analysis

The following bullet applies only to the Escrow Analysis section:
- The auditor will test each escrow account statement sent to the borrower during the review period.

3. Accuracy of Escrow Account Disbursements
  a. Are the disbursements in the "Account History" section of the escrow account statement accurate?
    i. The disbursements are accurate if the amounts listed in the "Actual Payments from Escrow" column of the "Account History" section match the amounts debited from the borrower's escrow account, as reflected in the servicing system.
    ii. Ocwen is permitted to use estimated disbursement amounts if (1) the disbursement is scheduled within the last two months of the "Account History" section and (2) the disbursement has not been made as of the "Analysis Date".
      1. Scheduled disbursements are accurate if they match either (a) "Estimated Amount of Next Disbursement" for that month as set forth in the "Projections for the Coming Year" section of the preceding year's escrow account statement or other evidence indicating the scheduled disbursement for that month or (b) the actual amount disbursed by Ocwen.

4. Accuracy of Escrow Account Deposits
  a. Are the deposits in the "Account History" section of the escrow account statement accurate?
    i. The deposits are accurate if the amounts listed in the "Actual Payments to Escrow" column of the "Account History" section match the amounts applied to escrow, as reflected in the servicing system.
    ii. Ocwen is permitted to assume scheduled deposits if (1) the deposits are scheduled to occur within the last two months of the "Account History" section and (2) the deposits have not been received as of the "Analysis Date".
      1. Scheduled deposits are accurate if they match either (a) the "Total Escrow Payment" as set forth in the preceding year's escrow account statement or (b) the actual deposit for that month.

5. Accuracy of Escrow Account "Beginning Balance"

     a. Is the "Beginning Balance" in the "Account History" section of the escrow account statement accurate?

          i. The "Beginning Balance" is accurate if it matches the escrow balance immediately preceding the first month listed in the "Account History" section of the escrow account statement.

          ii. If the escrow balance does not have a "Beginning Balance" in the account history section, the "Beginning Balance" is accurate if the "Actual Ending Balance" for the first month matches the system of record.

6. Accuracy of the "Total Annual Disbursements" Estimate

     a. Did Ocwen accurately estimate the "Total Annual Disbursement" for the borrower's taxes and/or insurance payments? 12 CFR 1024.17(c), (1),(2),(3),(7)

          i. Ocwen accurately estimated the "Total Annual Disbursement" if the "Total Annual Disbursement" is based on (1) the amount set forth in any insurance and/or tax documents received by Ocwen that allowed it to know the insurance or tax amounts for the upcoming year, (2) the amount of the disbursements in the preceding year as set forth in Ocwen's system of record, or (3) the amount of the disbursements in the preceding year as set forth in Ocwen's system of record and as modified by the Consumer Price Index.

               1. If Ocwen knows the amount of disbursements for the upcoming year, Ocwen must use those amounts to estimate the disbursements.

               2. If the disbursement for the preceding year has not yet been disbursed, the preceding year may be two years before the estimated year. For example, if an escrow account statement is generated in August 2014, the August 2015 insurance premium may be estimated based on the August 2013 insurance premium when the August 2014 premium has not yet been disbursed.

          ii. For the first escrow account statement conducted by Ocwen, the auditor will assume the estimated disbursement amounts are accurate if the prior year's disbursement was not made while the loan was on the REALServicing platform.

7. Accuracy of the "Target Escrow Payment"

     a. Did Ocwen accurately calculate the borrower's "Target Escrow Payment"? 12 CFR 1024.17(c)(1),(2),(3)

          i. Ocwen accurately calculated the "Target Escrow Payment" as listed in the "Projections for the Coming Year" section of the escrow account statement if the "Target Escrow Payment" equals 1/12 of the estimated "Total Annual Disbursements."

               1. The amount is accurate if it is within +/- $1.00 of 1/12 of the estimated "Total Annual Disbursements".

8. Accuracy of the cushion

     a. Did Ocwen accurately calculate the borrower's cushion? 12 CFR 1024.17(c)(1),(2),(5)

          i. Ocwen accurately estimated the cushion when it is equal to or less than twice the amount of the "Target Escrow Payment."

9. Accuracy of the target balance ("Starting Escrow Balance Needed")

     a. Did Ocwen accurately estimate the borrower's "Starting Escrow Balance Needed"? 12 CFR 1024.17(c)(1),(2),(3),(4); 12 CFR 1024.17(d)

          i. Ocwen accurately estimated the target balance, if the "Starting Escrow Balance Needed" listed in the "Projections for Coming Year" section matches the "Actual Ending Balance" or "Required Bal Projections" (column header varies by year) for the last month listed in the "Projections for Coming Year" section.

               1. The target balance is accurate if it is within +/- $1.00 of the "Actual Ending Balance" or "Required Bal Projections" listed in the "Projections for Coming Year" section.

10. Accuracy of surplus, shortage, and deficiency calculations

     a. Did Ocwen accurately calculate any surplus, shortage, or deficiency? 12 CFR 1024.17(f)(1),(2),(3),(4)

          i. Ocwen accurately calculated the surplus if the amount of the surplus equals the "Actual Ending Balance" for the last month listed in the "Account History" section minus the "Starting Escrow

Balance Needed" listed in the "Projections for Coming Year" section.  A surplus exists if the difference is positive.

    ii.  Ocwen accurately calculated the shortage if the amount of the shortage equals the "Actual Ending Balance" for the last month listed in the "Account History" section minus the "Starting Escrow Balance Needed" for the last month listed in the "Projections for Coming Year" section. A shortage exists if the difference is negative.

    iii.  Ocwen accurately calculated the deficiency if the deficiency equals the amount of the "Actual Ending Balance" for the last month listed in the "Account History" section and such amount is less than $0.

11. Surplus Refund
    a. In instances where Ocwen determined there was a surplus, did Ocwen refund the surplus? 12 CFR 1024.17(f)(2)
        i.  For a surplus of less than $50, Ocwen may credit the surplus against the next year's escrow payment.
        ii.  Ocwen is only required to refund the surplus if the borrower is current at the time of the escrow analysis.  The borrower is current if Ocwen receives the borrower's payment within 30 days of the payment due date. If the borrower is not current, Ocwen may retain the surplus.
        iii.  Ocwen refunded the surplus if Ocwen debited an amount to the borrower's escrow account in the amount of the surplus, as reflected in the system of record.

12. Shortage/Deficiency Distribution
    a. In instances where Ocwen determined there was a shortage/deficiency, did Ocwen appropriately distribute the shortage/deficiency? 12 CFR 1024.17(f)(3)
        i.  Ocwen adds shortages and deficiencies together and distributes the sum in the same manner.
        ii.  For all shortages/deficiencies, regardless of amount, Ocwen appropriately distributed the shortage/deficiency when the escrow account statement being tested indicates it will either (1) allow the shortage/deficiency to exist and do nothing to change it or (2) require the borrower to repay the shortage/deficiency over at least a 12-month period.
        iii.  For shortage/deficiencies of less than one-month's escrow payment, Ocwen appropriately distributed the shortage/deficiency when the escrow account statement being tested indicates it will (1) allow the shortage/deficiency to exist and do nothing to change it or (2) require the borrower to repay the shortage/deficiency over at least a 12-month period, or (3) require the borrower to repay the shortage/deficiency amount within 30 days.
    b. Ocwen need only distribute the deficiency, as explained above, if the borrower is current at the time the escrow analysis is generated.  If the borrower is not current, Ocwen may recover the deficiency pursuant to the terms of the loan documents.  Ocwen may also distribute the deficiency in accordance with the requirements described above, if it so chooses.
        i.  The borrower is current if Ocwen receives the borrower's payment within 30 days of the payment due date.

**Refund of Escrow Balance**

13. Refund of Escrow Balance Following Payment in Full
    a. If the borrower pays the account balance in full, did Ocwen refund the remaining escrow balance? 12 CFR 1024.34(b)
        i.  This test only applies to instances where the borrower paid the account balance in full.
        ii.  Ocwen issued a refund, if the refund equals the amount of the escrow balance in existence on the date the account was paid in full.
            1.  Ocwen may, in some instances, issue a subsequent refund to the borrower for amounts refunded to the escrow account after the date the account was paid in full (*e.g.*, Ocwen

receives refunds from an LPI policy or a preferred policy carrier after sending the initial refund to the borrower).

**Private Mortgage Insurance Testing Supplement**

The following bullets apply to the Private Mortgage Insurance Testing Supplement:

- This test applies to loans in Stratification 11 only.
- This test applies to loans originated on or after July 29, 1999 that are secured by single-family dwellings that are the principal residence of the borrower where the loan was used to finance the acquisition, initial construction, or refinancing of that dwelling.
- If a loan has been modified, the termination date is calculated using the modified terms and conditions of the loan.
- Original value means the lesser of the sales price of the property securing the mortgage or the appraised value at the time at which the subject residential mortgage transaction was consummated.
  - When determining the original value, the auditor may obtain relevant information from Ocwen's system of record.

14. Borrower Requested Cancellation of Private Mortgage Insurance
    a. Did Ocwen cancel the private mortgage insurance (1) on or before the cancellation date (2) when the borrower satisfied the criteria for borrower requested cancellation of the private mortgage insurance? 12 U.S.C. 4901(2); 12 U.S.C. 4902(a)
        i. This section is only relevant if the borrower has reached the cancellation date, as defined below.
        ii. For fixed rate and adjustable rate mortgages, the cancellation date means the date on which the principle of the mortgage based solely on actual payments reaches 80% of the original value of the property securing the loan.
        iii. Ocwen may also define the cancellation date as:
            1. For fixed rate mortgages, the date on which the mortgage is first scheduled to reach 80 percent of the original value of the property securing the loan based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date.
            2. For adjustable rate mortgages, the date on which the mortgage is first scheduled to reach 80 percent of the original value of the property securing the loan based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for that mortgage on that date.
        iv. The borrower satisfies the criteria for borrower requested cancellation when:
            1. The borrower submits a request for cancellation in writing to the servicer;
            2. The borrower has a good payment history with respect to the residential mortgage;
                a. Good payment history means that the borrower has not
                    i. Made a mortgage payment that was 60 days or longer past due during the 12-month period beginning 24 months before the later of (1) the date on which the mortgage reaches the cancellation date, or (2) the date that the borrower submits a request for cancellation, or
                    ii. Made a mortgage payment that was 30 days or longer past due during the 12-month period preceding the later of (1) the date on which the mortgage reaches the cancellation date, or (2) the date that the borrower submits a request for cancellation.
            3. The borrower is current on the payments required by the terms of the residential mortgage transaction; and

4. The borrower has satisfied any of Ocwen's requirements for:
    a. Evidence (of a type established in advance and made known to the mortgagor by the servicer promptly upon receipt of a request) that the value of the property securing the mortgage has not declined below the original value of the property; and
    b. Certification that the equity of the mortgagor in the residence securing the mortgage is unencumbered by a subordinate lien

15. Automatic Termination of Private Mortgage Insurance
    a. Did Ocwen terminate private mortgage insurance on or before the automatic termination date? 12 U.S.C. 4901(18); 12 U.S.C. 4902(b)
        i. This automatic termination test is only applicable if the private mortgage insurance was not cancelled pursuant to the test described in Section 14 and the account has reached the termination date, as defined below.
        ii. The termination date is the date a current borrower's loan to value ratio is greater than or equal to 78%, based solely on payments made.
        iii. Ocwen may also define the termination date as:
            1. For fixed rate mortgages, the date on which the principal balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.
            2. For adjustable rate mortgages, the date on which the principal balance of the mortgage, based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.
        iv. Ocwen is only required to terminate private mortgage insurance on the termination date if, on that date, the borrower is current on the payments required by the terms of the residential mortgage transaction.
            1. If the borrower is not current on the termination date, Ocwen is required to terminate private mortgage insurance on the first day of the first month beginning after the date that the borrower becomes current on the payments required by the terms of the residential mortgage transaction.

16. Final Termination
    a. Did Ocwen terminate the private insurance on or before the final termination date? 12 U.S.C. 4901(12); 12 U.S.C. 4902(c)
        i. This final termination test is only applicable if the private mortgage insurance was not cancelled pursuant to the test described in section 14 or terminated pursuant to the test described in section 15.
        ii. The final termination date is the first day of the month immediately following the date that is the midpoint of the amortization period of the loan if the mortgagor is current on the payments required by the terms of the mortgage.
            1. The midpoint is the point in time that is halfway through the period that begins upon the first day of the amortization period established at the time a residential mortgage transaction is consummated and ends upon the completion of the entire period over which the mortgage is scheduled to be amortized.

### Lender Placed Insurance Testing Supplement

The following bullets apply to the Lender Placed Insurance Testing Supplement:

- This test will apply to loans in Stratification 18 only.
- The term hazard insurance refers to insurance on the property securing a mortgage loan that protects the property against loss caused by fire, wind, earthquake, theft, falling objects, freezing, and other similar hazards for which the owner or assignee of such loan requires insurance. 12 CFR 1024.31
  - This section is not applicable to lender placed <u>flood</u> insurance policies. 12 CFR 1024.37(a)(2)(i)
- To confirm that a borrower had continuous insurance coverage that is compliant with hazard insurance requirements, Ocwen may require a written copy of the borrower's hazard insurance policy declarations page, the borrower's insurance certificate, the borrower's insurance policy, or other similar forms of written confirmation.
  - Ocwen may reject such evidence if the terms and conditions of the borrower's hazard insurance policy do not comply with the requirements set forth in relevant policies and procedures.
  - The evidence must be received at the fax number, website, or mailing address, as applicable, that Ocwen communicated to the borrower, borrower's agent, or borrower's insurance carrier for submitting the required documentation.

17. Charge for Lender Placed Insurance Policy
    a. Did Ocwen have a reasonable basis for assessing the borrower a premium charge or fee related to lender placed insurance? 12 CFR 1024.37(b)
        i. The testing described in Section 17(a) only applies to loans where Ocwen assessed a premium charge or fee to the borrower on or after January 10, 2014, unless state law requires otherwise.
        ii. Before assessing the borrower a premium charge or fee related to lender placed insurance, Ocwen must have a reasonable basis for assessing the premium charge and/or fee <u>and</u> act with reasonable diligence to ascertain a borrower's hazard insurance status.
        iii. Ocwen has a reasonable basis for assessing the borrower a premium charge or fee related to lender placed insurance if Ocwen has received information, either verbally or in writing, from the borrower, the borrower's insurance provider, or the borrower's insurance agent and such information indicates the borrower has failed to comply with the requirement to maintain hazard insurance.
        iv. If Ocwen is issuing a lender placed insurance policy, rather than renewing or replacing a lender placed insurance policy, Ocwen acted with reasonable diligence to ascertain a borrower's hazard insurance status if:
            1. Ocwen, at least 45 days before assessing to the borrower a lender placed insurance premium charge or fee, sent the borrower a written notice stating that it may purchase lender placed insurance at the borrower's expense and requesting the required insurance information (12 CFR 1024.37(c)(1)(i));
            2. Ocwen, at least 30 days after the initial notice and at least 15 days prior to assessing a lender placed insurance premium charge or fee, sent the borrower a reminder notice stating that it may purchase lender placed insurance at the borrower's expense and requesting the required insurance information (12 CFR 1024.37(c)(1)(ii)); and
            3. Ocwen did not receive from the borrower or the borrower's insurance agent, evidence demonstrating that the borrower had continuous hazard insurance coverage that complies with the requirements regarding hazard insurance set forth in relevant policies and procedures. 12 CFR 1024.37(c)(1)(iii)
        v. If Ocwen is renewing or replacing a lender placed insurance policy (*i.e.*, the most recent insurance policy in effect prior to the policy being tested is a lender placed insurance policy), Ocwen acted with reasonable diligence to ascertain a borrower's hazard insurance status if:

1. Ocwen, at least 45 days before assessing to the borrower a lender placed insurance premium charge or fee, sent the borrower a written notice stating that it may purchase lender placed insurance at the borrower's expense and requesting the required insurance information (12 CFR 1024.37(e)(1)(i)); and

2. Ocwen did not receive, from the borrower or the borrower's insurance agent, evidence demonstrating that the borrower had continuous hazard insurance coverage that complies with the requirements regarding hazard insurance set forth in relevant policies and procedures. 12 CFR 1024.37(e)(2)(ii)

3. Notwithstanding the requirements described above, if Ocwen receives evidence demonstrating that the borrower lacked insurance for a period of time following the expiration of the existing lender placed insurance policy, Ocwen may immediately assess the borrower a premium charge or fee for a lender placed insurance policy for that time period.  12 CFR 1024.37(e)(iii)

18. Bona Fide and Reasonable Charge

a. Did Ocwen assess the borrower a premium charge or fee for a lender placed insurance policy that was bona fide and reasonable? 12 CFR 1024.37(h)(1), (2), specific state laws

i. The premium charge is bona fide and reasonable if: (1) Ocwen assessed the borrower a charge or fee in the amount Ocwen was charged for the lender placed insurance policy, and (2) the effective date for the lender placed insurance policy is on or after the date the borrower's preferred hazard insurance policy was no longer effective.

1. The date on which the borrower's preferred hazard policy is no longer effective may be determined from written or verbal information provided by the borrower's insurance carrier.  In the event of a conflict between written and verbal information, the earliest date controls.

19. Timely Cancellation of Lender Placed Insurance

a. Did Ocwen correctly cancel the lender placed insurance policy and refund the appropriate lender placed insurance premium charges and fees? 12 CFR 1024.37(g), specific state laws

i. This test applies to loans where Ocwen received, on or after January 10, 2014, evidence demonstrating that the borrower had continuous hazard insurance coverage that overlapped with the period of time covered by a lender placed insurance policy.

ii. Ocwen must cancel the lender placed insurance policy within 15 days of receiving, from the borrower or the borrower's agent, evidence demonstrating that the borrower had continuous hazard insurance coverage that overlapped with the period of time covered by a lender placed insurance policy and complied with the hazard insurance requirements set forth in relevant policies and procedures.  12 CFR 1024.37(g)(1)

1. Ocwen is not required to cancel a lender placed insurance policy within 15 days of a verbal communication with either the borrower or the borrower's agent, even if such communication follows receipt of a document that does not meet the requirements set forth in relevant policies and procedures.

20. Accuracy of Pro-Rata Refund of Lender Placed Insurance Premium

a. Did Ocwen accurately refund the pro-rata portion of the lender placed insurance premium charge or fee to the borrower's escrow account or directly to the borrower?  12 CFR 1024.37(g)

i. Ocwen must refund, to the borrower's escrow account or directly to the borrower, all lender placed insurance premium charges and/or fees paid by the borrower for any period of overlapping insurance coverage and/or remove such amounts from the borrower's account.

1. A period of overlapping insurance coverage means the period of time during which the lender placed insurance policy and the borrower's preferred hazard insurance policy were in effect at the same time.

2.   The pro-rata refund will be calculated based on the formula used by Ocwen at the time of the refund.

c.   <u>Additional Information Related to Errors</u>

For each error identified by the auditor, as defined in Section 2.1.b., it will gather the following information to the extent the information is reasonably accessible:

- The name of the borrower;
- The state where the property is located;
- The nature of the error;
- The date of the error;
- The date Ocwen first became aware of the error;
- How the error came to Ocwen's attention (internal process, third-party notification, consumer complaint, regulatory agency, etc.);
- An analysis of whether the error caused financial harm, including;
  - Basis for determination regarding financial harm, and
  - Amount of any harm.
- If the error was remediated, and, if so, how and when it was remediated; and
- For any unidentified or un-remediated Errors, the auditor must provide information regarding why the error was not identified and/or remediated.  During the review, the auditor will also determine if the error caused any financial harm to the borrower.

Information is reasonably accessible when it is gathered during the loan level testing or can be obtained through communications with Ocwen or its vendors.  Information is not reasonably accessible if the auditor or Ocwen must conduct research that extends beyond a review of the usual and customary sources where Ocwen may obtain such information.

d.   <u>Corrective Actions</u>

If the auditor identifies Errors previously remediated by Ocwen, regardless of whether they resulted in financial harm, the auditor will confirm that the corrective actions were sufficient to: (1) remediate the Error, and, if applicable, remediate any other similarly impacted borrowers, and (2) prevent the Error from recurring.  The auditor may rely on documentation provided by Ocwen or its vendors in determining whether corrective actions were sufficient.  Ocwen remediated harm if it provided restitution to correct financial harm and took steps to prevent the error from recurring.

If the auditor determines Ocwen's corrective actions were not sufficient or identifies instances of non-remediated errors, Ocwen will implement a corrective action plan not objected to by the signatory states.  The auditor will confirm the corrective action plan and any necessary remediation efforts are sufficient.   In the event Ocwen implements remediation to address a non-remediated Error, the auditor will review a statistically valid sample of borrowers potentially impacted by each root cause to confirm the remediation efforts were successfully completed.

## 2.2   Scope of Engagement

The auditor will:

- Develop an Audit Plan detailing how it will apply the testing methodology set forth in Section 2.1 within 60 days of engagement; Start time to begin the project after submission of the audit plan will be within 30 days.
- Conduct the testing described in the Audit Plan (if it is necessary to come onsite the location would most likely be the Ocwen Addison, TX location);
- Revise the Audit Plan as necessary to account for additional evidence or circumstances discovered during testing; and
- Generate a final report ("Escrow Report") regarding its activities that will include any information that it deems relevant to the Escrow Report (at a minimum the report will describe the auditor's Sampling Methodology, Testing Methodology, a spreadsheet complete with a full listing of escrow accounts reviewed including the information in 2.1(c), and information related to Corrective Actions).
  - o The Escrow Report, and any drafts, shall be provided simultaneously to Ocwen and the signatory states.
  - o The Escrow Report will not include an error rate calculated by the auditor.

# 3 Vendor Selection

## 3.1 Selection Criteria

Ocwen's Bidder selection criteria are designed to ensure the selection of a highly qualified vendor that is capable of performing all tasks within the scope of engagement in a comprehensive and expeditious manner. Ocwen will use the selection criteria set forth below in connection with this RFP.

Qualifying Criteria:

- Successful completion of Ocwen's compliance check
- Specific capabilities to meet technical and business requirements scoped under Section 2.2

Evaluation Criteria:

- Overall cost of the engagement
- Expertise and experience with similar engagements
- Acceptance of the Agreements
- Bidder diversity
- Audited financial statements for the most recent fiscal year and quarter. If audited financials are unavailable, Bidders are required to provide unaudited statements with an accompanying certification from an appropriate officer of the company stating that such data is current and accurate
- W-9 form (August 2013 version or later) filled, signed and dated W-9
- Vendor and bank account details for automated clearing house payment setup (attached)
- Disaster recovery and business continuity plan
- Attestations of background check
- Security questionnaire (attached)
- Certificate of insurance

## 3.2 Administrative or Judicial Proceedings

Each Bidder shall describe any pending, contemplated or ongoing administrative or judicial proceedings material to the Bidder's business or finances. Such description shall include, without limitation, any litigation, consent orders or

agreements with any state or federal regulatory agency issued to the Bidder or to any subcontractor the Bidder plans to use for the Services described herein.

In addition, each Bidder shall indicate whether the Bidder or any of its executive officers or directors is currently or has been within the past three (3) years a party to any legal proceeding or regulatory action (whether government or industry) other than those arising out of the ordinary course of business. As to each such proceeding or action, the Bidder shall identify the court or agency involved and provide a description of the nature of the matter and its final outcome or current status, as applicable.

## 3.3  Business Capabilities

Each Bidder must provide a detailed response to Section 2.2 addressing all requirements that explains the Bidder's strategy and capability to deliver on the same. Bidders shall include the expected timeline for completion of the scope, milestones, expected number of resources, travel plans, foreseeable complexities and any other relevant details that can illustrate the Bidder's experience and capabilities.

## 3.4  Fees

Each Bidder must provide a detailed breakdown of the hours that the Bidder will dedicate to address each point in the scope, along with the applicable hourly rates.  In lieu of fees based on hourly rates, Ocwen will consider a fixed-fee arrangement for this RFP.  Bidders shall identify expected out-of-pocket expenses, if any, as a separate cost and will require Ocwen's prior written approval of incurring such expenses. The standard payment term is net forty-five (45) days and invoicing will only occur after services are delivered and then accepted by Ocwen. Bidders will submit proposal prices in U.S. dollars.

## 3.5  References

Bidders shall submit three (3) customer references, for which Bidders have performed similarly scoped services within the past 12 months.  Such references shall include:
- Company name
- Contact person (should be at managerial level or above)
  - Name, phone number, availability
- Reference description
  - Brief explanation of Bidder's relationship with the reference and the type of services provided during the past twelve (12) months

## 3.6  Standard Agreement

A proposal submitted in response to this RFP shall constitute a binding offer by Bidder.  The binding offer will remain binding and irrevocable for a period of one hundred eighty (180) days after the Submission Deadline.  A proposal submitted in response to this RFP acknowledges acceptance by a Bidder of the terms and conditions set forth in the Master Vendor Agreement, which is attached hereto as Exhibit A and incorporated herein by this reference.  Any remarks, additions, amendments or exceptions attached by the Bidder to the proposal, which conflict with the RFP and/or Agreement, are hereby rejected and will result in Ocwen deeming the proposal non-responsive.  Upon bid award, Ocwen will execute the Agreement with the selected Bidder or Bidders along with the applicable SOWs.

## 4   RFP Terms and Conditions

### 4.1   Right to Select

Ocwen reserves the right to (i) reject any and all proposals; (ii) waive informalities and minor irregularities in proposals received; (iii) accept any portion of a proposal or all items proposed if deemed in Ocwen's best interest and (iv) award more than one Bidder. All material submitted by Bidders in response to this RFP become the property of Ocwen. Ocwen's receipt of a proposal to this RFP or response to any inquiry shall have no legal binding effect on Ocwen. A fully executed written agreement entered into with the selected Bidder or Bidders is required before any obligation is imposed on Ocwen.

### 4.2   General terms

- Ocwen shall have no liability for costs Bidders incur in connection with the preparation or submission of any proposal.
- This RFP is not an offer to purchase any services or materials. All expenses related to the development and submission of a proposal to this RFP are a Bidder's sole responsibility
- The information contained in this RFP is provided to guide interested parties in formulating proposals and no representation is made regarding the completeness or accuracy of the information provided herein
- Ocwen shall have no liability for any inaccuracies that this RFP may be contain or any intentional or accidental omissions from this RFP
- Bidders shall not rely on anything contained in this RFP as a commitment, guarantee or representation by Ocwen regarding future events or performance obligations

## 5   Company profile

Ocwen Financial Corporation is a publicly traded financial services company (NYSE:OCN). Through its operating subsidiaries, Ocwen provides residential mortgage loan servicing to homeowners throughout the United States. Ocwen has a global presence with multiple offices across the United States, India, the US Virgin Islands, and the Philippines. If you would like to learn more about Ocwen, please visit www.ocwen.com.